IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

MICHAEL PALMER,

    Plaintiff,

v.

RICHARD ROBBINS; JAMES WINSTON;
and OFFICER CHRISTOPHER MCBRIDE,

    Defendants.

CIVIL ACTION NO.: 4:19-cv-167

# O R D E R

This matter is before the Court on Defendants Richard Robbins, James Winston, and Christopher McBride's Motion to Dismiss. (Doc. 10.) Plaintiff Michael Palmer filed this suit asserting claims for malicious prosecution under the Fourth Amendment against all Defendants, malicious prosecution under Georgia law against Defendant Winston, and "racial discrimination in violation of the Fourteenth Amendment" against Defendant Robbins. (See doc. 8.) In response, Defendants filed the at-issue Motion to Dismiss, (doc. 10), to which Plaintiff filed a Response, (doc. 12), and Defendants thereafter filed a Reply, (doc. 14). For the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss. (Doc. 10.) Specifically, the Court **DISMISSES** Count I to the extent it asserts a claim based on the Fourteenth Amendment as well as Count III entirely. Count I, to the extent it asserts a Fourth Amendment malicious prosecution claim, will stand as will Counts II and IV.[1]

---

[1] In response to Plaintiff's initial Complaint, Defendants filed a Motion for Judgment on the Pleadings, which remains pending. (Doc. 4.) Notably, that motion raised essentially the same issues and arguments as the at-issue Motion to Dismiss, except that it also argued that Defendant McBride had not been properly served with process. (Compare generally doc. 4-1 with doc. 10-1.) Plaintiff thereafter filed his Amended Complaint, (doc. 8), and Defendants then filed the at-issue Motion to Dismiss, (doc. 10). Under black letter

## BACKGROUND

This action arises out of an investigation of gasoline theft from Herty Advanced Materials Development Center, which is part of Georgia Southern University. (Doc. 8, pp. 2, 5.) Some time in November 2016, Herty Operations Director Richard Robbins contacted Lieutenant Christopher McBride, an officer with the Georgia Southern University Police Department, about the gasoline theft. (Id. at pp. 2–3, 5.) Robbins showed Lieutenant McBride video footage from a surveillance camera which he said depicted Plaintiff, who was a Herty employee, and two other individuals (whom he also claimed to recognize and identify) stealing gasoline. (Id. at p. 5.) According to the Amended Complaint, however, the video was "of such poor quality that it [was] impossible to recognize" anyone in it. (Id.)

After "interrogating [Plaintiff] and the two other suspects," Lieutenant McBride asked Robbins to have another employee—"preferably someone in a supervisory capacity"—view the video and provide an "independent assessment." (Id. at pp. 6–7.) Three days later, Robbins gave

---

federal law, "an amended complaint supersedes the initial complaint and becomes the operative pleading in the case." Lowery v. Ala. Power. Co., 483 F.3d 1184, 1219 (11th Cir. 2007) (citations omitted). This means that "the original pleading is abandoned by amendment and is no longer a part of the pleader's averments against his adversary." Dresdner Bank AG v. M/V Olympia Voyager, 463 F.3d 1210, 1215 (11th Cir. 2006) (citation omitted). An amended complaint thus "renders [the original] of no legal effect." Arce v. Walker, 139 F.3d 329, 332 n.4 (2d Cir. 1998) (citation omitted); see also Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016) (initial filing "bec[o]mes a legal nullity"). To be sure, however, an original complaint would still have legal effect if "the amendment specifically refers to or adopts the earlier pleading." Varnes v. Local 91, Glass Bottle Blowers Ass'n, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982) (citation omitted). An amended complaint that does not incorporate the prior pleading, therefore, moots "the motion to dismiss the original complaint because the motion seeks to dismiss a pleading that has been superseded." Wimberly v. Broome, No. 6:15-CV-23, 2016 WL 3264346, at *1 (S.D. Ga. Mar. 29, 2016) (collecting cases). Plaintiff's Amended Complaint contains no reference to, or adoption of, any allegations set forth in his prior pleading. (Doc. 8.) As such, Plaintiff's First Amended Complaint is the sole operative pleading in this case and renders moot Defendants' Motion for Judgment on the Pleadings, (doc. 4). Moreover, mootness is particularly applicable here where Defendants challenged the substance and legal sufficiency of Plaintiff's allegations and Plaintiff directly responded to those challenges in his First Amended Complaint. Further, Defendants have not reasserted their argument that Defendant McBride had not been properly served. Accordingly, the Court **DENIES AS MOOT** Defendants' Motion for Judgment on the Pleadings. (Id.)

Lieutenant McBride a statement from James Winston. (Id. at p. 7.) Winston was a team leader at the Herty plant whose "job duties were related to the production and manufacturing process;" Plaintiff notes that Winston "had no human resource responsibilities, no investigative duties or responsibilities and no arrest powers." (Id. at p. 16.) The statement from Winston said he could also identify the individuals—who were Herty employees—from the video. (Id. at p. 7.)

The Amended Complaint additionally alleges that, "[a]t all times relevant to this [C]omplaint, there was a pervasive culture of racism at Herty which was mostly created and maintained by Defendant Robbins." (Id. at p. 8.) As an "example," the Amended Complaint states that, "[o]f the 15 African American employees [employed by Herty during the year 2016,] seven (almost 50%) were either fired or forced to resign even though they ha[d] committed no work related infractions or violations." (Id.) During the same time period, however, no Caucasian employees were terminated, even though at least two Caucasian employees had been "written up" multiple times for work-related infractions or violations. (Id. at pp 8–9.) The Amended Complaint also includes vague allegations of mistreatment of an African-American human resources officer (who is not a party to this lawsuit) and of restrictions on employees' abilities to make human resources-related complaints. (Id. at p. 9.)

Sometime in November or December 2016, Lieutenant McBride provided Officer Matthew Russell of the Savannah Police Department (who is not named as a defendant) the information from his investigation and requested that Officer Russell apply for and obtain an arrest warrant for Plaintiff. (Id.) Officer Russell applied for and obtained the warrant on December 20, 2016, and Plaintiff was arrested on February 2, 2017. (Id.) More than a year later, the charges against Plaintiff were dismissed. (Id. at p. 8.)

On June 6, 2019, Plaintiff filed his Complaint initiating this action in the Superior Court of Chatham County, Georgia. (Doc. 1, p. 1.) Defendants removed the case to this Court, (see generally doc. 1), and filed a Motion for Judgment on the Pleadings, (doc. 4). Plaintiff then filed an Amended Complaint, (doc. 8), prompting Defendants to file their Motion to Dismiss, (doc. 10).

## LEGAL STANDARD

Under a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009) (citing Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262 (11th Cir. 2004)). A complaint must state a facially plausible claim for relief, and "'[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not suffice. Ashcroft, 556 U.S. at 678 (internal quotations omitted).

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal punctuation and citation omitted). While a court must accept all factual allegations in a complaint as true, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Id. (internal citation omitted). In addition, when a

dispositive issue of law allows for no construction of the complaint's allegations to support the cause of action, dismissal is appropriate. Neitzke v. Williams, 490 U.S. 319, 326 (1989).

## DISCUSSION

Plaintiff asserts several claims connected to his February 2, 2017 arrest. First, he brings malicious prosecution claims under 42 U.S.C. § 1983 against Robbins and McBride (Counts I and II). (Doc. 8, pp. 9–13.) In addition, within Count I, Plaintiff also purports to assert a claim for "racial discrimination in violation of Fourteenth Amendment" against Robbins. (Id. at p. 9.) Finally, he alleges that Winston is liable for malicious prosecution under Georgia law or, alternatively, that he is liable for malicious prosecution under Section 1983 (Counts III and IV). (Id. at pp. 13–16.) Defendants move to dismiss all of these claims. They first argue that the Amended Complaint "does not provide sufficient facts to support a claim under § 1983." (Doc. 10-1, p. 4.) They next argue that they are entitled to qualified immunity as to Plaintiff's Section 1983 claims. (Id. at p. 10.) Finally, they assert that Plaintiff's state law claim against Winston is barred by state sovereign immunity. (Id. at p. 12.) The Court will address each of these arguments in turn.

**I. Plaintiff's Federal Law Claims**

**A. Plaintiff's Federal Malicious Prosecution Claims**

Plaintiff asserts a claim of malicious prosecution under Section 1983 against Defendants Robbins, McBride, and Winston.[2] "A successful section 1983 action requires that the plaintiff show [he] was deprived of a federal right by a person acting under color of state law." Almand v. DeKalb Cty., 103 F.3d 1510, 1513 (11th Cir. 1997). Thus, as an initial matter the Court must determine whether the Amended Complaint sufficiently alleges that each Defendant acted under

---

[2] The claim against Winston is asserted as an alternative to Plaintiff's state malicious prosecution claim against him.

5

color of state law. In making this determination, "[t]he dispositive issue is whether the official was acting pursuant to the power he/she possessed by state authority or acting only as a private individual." Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1523 (11th Cir. 1995). Following that inquiry, the Court will turn to the issue of whether Plaintiff has adequately alleged a federal malicious prosecution claim against any Defendant who was sufficiently alleged to have been acting under color of state law.

### (1) Whether Defendants Acted under Color of State Law

Plaintiff alleges that Robbins is "the operations director at the Herty Advanced Materials Development Center, Georgia Southern University," and that Lieutenant McBride is "a police officer employed by the Georgia Southern University Police Department." (Doc. 8, pp. 2–3.) Alleging that a defendant acted while working for a state university normally satisfies the "under color of state law" requirement. See Edwards, 49 F.3d at 1522–23 ("[S]tate employment is generally sufficient to render the defendant a state actor.") (internal quotations omitted); Parker v. Graves, 479 F.2d 335, 336 (5th Cir. 1973) (per curiam) (state university athletic director acted under color of state law).[3] Thus, as to Robbins and McBride, the allegations in the Amended Complaint sufficiently allege that they were acting under color of state law (as the operations director of the campus plant that had fallen victim to theft and as a campus police officer responding to the report of theft, respectively) when they committed or contributed to the alleged malicious prosecution.

Plaintiff asserts more detailed information about Winston, which impacts the "under color of law" analysis as to him. Plaintiff specifically alleges that Winston was a "team leader" at Herty

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former United States Court of Appeals for the Fifth Circuit decided prior to October 1, 1981.

and "all his job duties were related to the production and manufacturing process at Herty plant." (Doc. 8, p. 16.) Furthermore, he had "no human resource responsibilities, no investigative duties or responsibilities and no arrest powers." (Id.) Given these allegations, Winston's review of the video footage and identification of Plaintiff as one of the individuals depicted therein would not have been undertaken pursuant to his job duties or to any power or authority granted to him by the state. As a result, pursuant to the allegations in the Amended Complaint, Winston was not acting under color of law. See Christman v. Walsh, 416 F. App'x 841, 844 (11th Cir. 2011) (per curiam) ("A state official acts under color of law when he exercises the authority that he possesses by virtue of his position with the state."). Accordingly, the Court **DISMISSES** Count III of the Amended Complaint.

### (2) Whether Plaintiff has Adequately Alleged a Federal Malicious Prosecution Claim against Robbins and McBride

Malicious prosecution claims brought pursuant to Section 1983 arise under the Fourth Amendment. Uboh v. Reno, 141 F.3d 1000, 1003–04 (11th Cir. 1998). To make out a viable claim under this theory, Plaintiff must allege: (1) a violation of his Fourth Amendment right to be free from unreasonable seizures; and (2) the elements of the common law tort of malicious prosecution. Id.; see also Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003). To establish the common law tort, a plaintiff must show: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." Green v. City of Lawrenceville, 745 F. App'x 881, 883 (11th Cir. 2018) (per curiam) (quoting Kjellsen v. Mills, 517 F.3d 1232, 1237 (11th Cir. 2008)). Defendants argue that the Amended Complaint does not satisfactorily allege the first element—that they instituted or continued a criminal prosecution against Plaintiff. (Doc. 10-1, p. 5.)

Defendants contend that they did not institute the prosecution because "the ultimate decision to arrest and prosecute Plaintiff . . . was left to and ultimately made by [Officer Russell of the] Savannah [Police Department]," who has not been named as a defendant in this lawsuit. (Id. at p. 7.) In response, Plaintiff argues that "Officer Russell conducted no investigation of his own [and] merely took the results of [Plaintiff's] investigation . . . at face value." (Doc. 12-1, p. 3.) The Eleventh Circuit has stated that, under federal law, a defendant is not the legal cause of a prosecution or other criminal proceeding where "there [is] no evidence that [the defendant] had anything to do with the decision to prosecute or that [the defendant] had 'improperly influenced' that decision." Williams v. Miami-Dade Police Dep't, 297 F. App'x 941, 947 (11th Cir. 2008) (per curiam) (quoting Eubanks v. Gerwin, 40 F.3d 1157, 1160 (11th Cir. 1994)). Put another way, the "intervening acts of the prosecutor, grand jury, judge and jury . . . each break the chain of causation *unless* plaintiff can show that these intervening acts were the result of deception or undue pressure by the defendant[s]." Barts v. Joyner, 865 F.2d 1187, 1195 (11th Cir. 1989) (emphasis added).[4]

Here, the Amended Complaint asserts that, "[b]ased on information provided by and upon request of Lieutenant McBride[,] Officer Matthew Russell of Savannah Police Department applied for and obtained a warrant for Plaintiff's arrest." (Doc. 8, p. 7.) The Amended Complaint does not contain any allegations tending to show Robbins or McBride applied any undue pressure on Russell. As for deception, within Counts I and II, Plaintiff alleges that his prosecution was based upon statements by Robbins and McBride that were "knowingly false or made with reckless

---

[4] Both parties cite Georgia law on the issue of whether Plaintiff adequately alleged the first element of Section 1983 malicious prosecution claim. However, "[w]hen malicious prosecution is brought as a federal constitutional tort, the outcome of the case does not hinge on state law, but federal law, and does not differ depending on the tort law of a particular state." Wood, 323 F.3d at 882 n.17. The Court will thus only apply federal case law.

8

disregard for the truth." (Id. at pp. 10, 12.) While Plaintiff neglects to specify these improper statements, the Amended Complaint clearly alleges the theory that Robbins was not telling the truth when he claimed he recognized Plaintiff as one of the individuals committing the theft on surveillance footage because the footage Robbins purportedly relied on is "of such poor quality that it is impossible to recognize who the person in the video is. . . . [or] to even distinguish the clothing of the subject from the body – let alone observe any body features." (Id. at p. 5.) Specifically, Plaintiff alleges that because the video is "grainy and of inconsistent (pulsating) speed[,] it is impossible to determine (even approximately) any mannerism or actual body movements [because] the body movements in the video are necessarily distorted due to the 'jerking' speed of the camera." (Id. at pp. 5–6.) Assuming, as the Court must, that the quality of the footage is truly as poor as Plaintiff describes it, the Court must also assume that Robbins would not have been able to offer an honest and good faith identification of Plaintiff as one of the individuals in the video.[5] (Id. at p. 5.) As a result, Robbins' statement to Lieutenant McBride—that he could tell it was Plaintiff in the video—was deceptive and plausibly would have improperly influenced Lieutenant McBride's—and, in turn, Officer Russell's—decision to proceed toward Plaintiff's arrest and prosecution. Similarly, the Court must assume that Lieutenant McBride, who also observed the video, should and would have realized that the quality was too poor for Robbins (or Winston) to reliably identify the depicted individuals from their appearances or even their body characteristics and mannerisms. Since the Amended Complaint does not provide any other possible grounds Lieutenant McBride could have given to Officer Russell to provide probable

---

[5] While both Robbins and Winston were allegedly able to identify a vehicle in the footage as one belonging to Plaintiff (the plausibility and veracity of which the Amended Complaint does not challenge), the presence at the scene of a vehicle appearing to be one belonging to Plaintiff is—at this stage of the proceedings— not sufficient grounds to find probable cause, as a matter of law, for Plaintiff's ultimate arrest.

cause,[6] the Court must assume that Officer Russell's application for an arrest warrant for Plaintiff was based exclusively on Robbins' (and perhaps Winston's) deceptive, reckless and misleading identification of Plaintiff. Thus, the Court finds that the Amended Complaint plausibly alleges that Plaintiff's arrest and prosecution resulted from improper influence exerted by Robbins and Lieutenant McBride, and Plaintiff has therefore stated actionable claims against Robbins and McBride for violation of his Fourth Amendment right.

### B. Plaintiff's Fourteenth Amendment Claim

At the end of Count I of his Amended Complaint, Plaintiff additionally alleges that Robbins' "actions were motivated by racial discrimination in violation of the Fourteenth Amendment to [the] U.S. Constitution." (Doc. 8, p. 11.) The actions alleged in Count I to have been committed by Robbins are the initiation and continuation of the criminal prosecution against Plaintiff for theft by taking, including Plaintiff's arrest. (Id. at pp. 10–11.) "'The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike.'" Watson v. Div. of Child Support Servs., 560 F. App'x 911, 913 (11th Cir. 2014) (per curiam) (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). "'[T]o properly plead an equal protection claim, a plaintiff need only allege that through state action, similarly situated persons have been treated disparately.'" Boyd v. Peet, 249 F. App'x 155, 158 (11th Cir. 2007) (per curiam) (quoting Thigpen v. Bibb Cty., 223 F.3d 1231,

---

[6] It certainly bears noting that, per the Amended Complaint, Lieutenant McBride "interrogat[ed] [Plaintiff] and the two other suspects" before approaching Officer Russell about obtaining an arrest warrant. While this indicates Lieutenant McBride may have relied on something more than Robbins and Winston's identifications of Plaintiff's vehicle and their assumedly dubious identifications of Plaintiff himself as one of the perpetrators in the footage, without more information about the interrogation, the Court cannot speculate or assume that McBride gleaned any evidence that led to his decision to arrest Plaintiff. Put another way, construing the pleadings as the Court must at this early stage, Plaintiff has plausibly alleged that the decision to arrest Plaintiff was based solely on the improper actions of Robbins and McBride.

10

1237 (11th Cir. 2000), *abrogated on other grounds by* Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)); see also Banks v. Dean, No. 2:14-cv-01260–KOB–JHE, 2015 WL 4637694, at *3 (N.D. Ala. Aug. 3, 2015) ("To allege a cognizable claim under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege he is similarly situated with other persons who were treated differently and the reason for the differential treatment was based on some constitutionally protected interest such as race . . . .").

Robbins argues that Plaintiff's Fourteenth Amendment claim must be dismissed because "Plaintiff does not describe any similarly situated comparators [who allegedly] received preferential treatment" compared to him. (Doc. 10-1, pp. 9–10.) Plaintiff responds by pointing to the portion of the Amended Complaint that alleges that almost half of the African-American employees at the Herty plant "were either fired or forced to resign even though they ha[d] committed no work related infractions or violations" while two Caucasian employees kept their jobs even though they had been "written up" for work-related misconduct. (Doc. 12-1, p. 13.) Plaintiff then argues that he is part of the group of African Americans who were fired or forced to resign despite not having done anything wrong, and his comparators are the two Caucasian employees who were not terminated. (Id. at p. 14.) Alternatively, he argues that his comparators are all the "Caucasian workers who also engaged in *no* misconduct at all and were not fired." (Id. (emphasis added).)

Plaintiff's argument fails for several reasons. First, Plaintiff never affirmatively alleges anywhere in the Amended Complaint that he is African-American. Because this factual allegation is missing, there is no basis for grouping Plaintiff with African Americans in a comparator analysis. Furthermore, even assuming that Plaintiff properly alleged he was African-American, his claim should still be dismissed because he fails to allege any proper comparators. Plaintiff never asserts

11

in his Amended Complaint that Robbins fired him from the Herty plant much less that he suffered any adverse employment-related treatment or consequence at all. Since nothing in the Amended Complaint alleges Plaintiff's termination, he cannot now assert that he was fired and try to compare himself to white employees who were not. See, e.g., Guerrero v. Target Corp., 889 F. Supp. 2d 1348, 1355 n.6 (S.D. Fla. 2012) ("[A] Plaintiff may not amend a complaint via a response to a motion to dismiss."). Indeed, his allegations in Count I focus on Robbins' actions relating to his arrest and prosecution. Moreover, he does not point to any potential comparators of a different race who, for instance, were suspected of criminal activity but were not reported by Robbins to law enforcement for arrest and prosecution. For these reasons, the Court **DISMISSES** Count I to the extent it asserts a claim based on the Fourteenth Amendment.

### C. Qualified Immunity

Even though Plaintiff has sufficiently alleged Section 1983 malicious prosecution claims against McBride and Robbins, the Court must still determine whether McBride and Robbins are entitled to qualified immunity. "While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002). "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). "Qualified immunity is intended to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Hoyt v. Cooks, 672 F.3d 972, 977 (11th Cir. 2012) (quotations and

citations omitted). As a result, qualified immunity "liberates government agents from the need to constantly err on the side of caution by protecting them both from liability and the other burdens of litigation, including discovery." Holmes v. Kucynda, 321 F.3d 1069, 1077 (11th Cir. 2003) (internal quotation marks omitted). But qualified immunity does not protect an official who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982)) (internal quotation marks and alteration omitted).

To rely upon qualified immunity, a defendant first must show that he acted within his discretionary authority. Mobley v. Palm Beach Cty. Sheriff Dep't, 783 F.3d 1347, 1352 (11th Cir. 2015). Specifically, a defendant must show that he "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Holloman *ex rel*. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). Robbins and Lieutenant McBride argue that they were working within their discretionary authority, (doc. 10-1, p. 11), and Plaintiff does not dispute this, (see doc. 12-1, pp. 15–16).

As Robbins and Lieutenant McBride have properly asserted the defense of qualified immunity, the burden now shifts to Plaintiff to show that qualified immunity is not appropriate. Sebastian v. Ortiz, 918 F.3d 1301, 1307 (11th Cir. 2019). The Court must grant qualified immunity unless the Amended Complaint alleges (a) a violation of the Constitution by Defendant, (b) the illegality of which was clearly established at the time of the incident. Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (citations omitted). The Court has discretion in deciding which of those two prongs to address first. Pearson v. Callahan, 555 U.S. 223, 236 (2009). In this case, the Court has already determined that Plaintiff has alleged a constitutional violation via the Section

1983 malicious prosecution claim.[7] Thus, the Court must determine whether the illegality of Robbins and Lieutenant McBride's alleged conduct was clearly established at the time of the incident underlying this lawsuit.

"[T]he touchstone of qualified immunity is notice." Bussey-Morice v. Gomez, 587 F. App'x 621, 627 (11th Cir. 2014) (per curiam) (citing Holmes, 321 F.3d at 1078). The violation of a constitutional right is clearly established if a reasonable official would understand that his conduct violates that right. Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc). Under the Eleventh Circuit's framework for applying this step of the qualified immunity analysis, a plaintiff must show that the allegedly violated right was "clearly established" in one of three ways. First, the plaintiff may point to a "materially similar case [that] has already been decided" by the Supreme Court of the United States, the Eleventh Circuit Court of Appeals, or the highest court of the pertinent state, affirming the existence of the right and thereby providing fair notice that the at-issue conduct would constitute a violation of the at-issue right. Loftus v. Clark-Moore, 690 F.3d 1200, 1204 (11th Cir. 2012). Second, a broad statement of principle from "a federal constitutional or statutory provision or earlier case law" can provide notice that certain conduct amounts to a constitutional violation where the principle "applie[s] with obvious clarity to the circumstances, establishing clearly the unlawfulness of Defendants' conduct." Id. (internal quotation marks omitted). Finally, the plaintiff may show that the alleged conduct of the officials was "so egregious that a constitutional right was clearly violated, even in the total absence of case law." Lewis v. City of West Palm Beach, 561 F.3d 1288, 1292 (11th Cir. 2009).

---

[7] The Court has already determined that Plaintiff failed to allege an actionable claim of racial discrimination in violation of the Fourteenth Amendment against Robbins. (See Section I.B, supra.) However, even if he had pled an actionable claim, Plaintiff points to no law showing that the illegality of the alleged violation was clearly established at the time of the incident. Thus, the Court **DISMISSES** the Fourteenth Amendment claim in Count I on the alternative ground that Robbins is entitled to qualified immunity.

Here, Plaintiff has met this burden because there is a well-established principle "that fabricating incriminating evidence violate[s] constitutional rights." Riley v. City of Montgomery, 104 F.3d 1247, 1253 (11th Cir. 1997) (citing Schneider v. Estelle, 552 F.2d 593, 595 (5th Cir. 1977)). The Eleventh Circuit has consistently reaffirmed this. See, e.g., Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004) ("[F]alsifying facts to establish probable cause is patently unconstitutional and has been so long before . . . 1995."); Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1281 (11th Cir. 2002) ("An investigator's planting or fabricating evidence in an effort to obtain a conviction does violate clearly established law."); Jones v. Cannon, 174 F.3d 1271, 1289 (11th Cir. 1999) ("Using or planting false evidence in an effort to obtain a conviction violates the Constitution.").[8] The Court is satisfied that Riley and the cases that follow it confirm a broad, clearly established principle that gives reasonable state actors "fair and clear notice" that they would violate the Constitution if they provided a false and misleading identification in order to obtain an arrest. Bates v. Harvey, 518 F.3d 1233, 1248 (11th Cir. 2008).

It may be that the record evolves in a much different fashion than the Amended Complaint alleges. Several key facts remain to be developed including details about the quality of the video, the depth of Lieutenant McBride's investigation, and Officer Russell's role in the case. At this stage, however, the Amended Complaint makes sufficient allegations to proceed. Therefore, the Court **DENIES** Defendants McBride and Robbins' Motion to Dismiss Counts I and II's federal

---

[8] Plaintiff's federal malicious prosecution claim is most analogous to Williams v. Miami-Dade Police Department. In that case, the plaintiff alleged that that the defendant officer falsified evidence which other officers and the prosecutors then used in his prosecution. Williams, 297 F. App'x at 947. The defendant argued that he could not be held liable for malicious prosecution because he had not initiated the proceeding, but the Eleventh Circuit denied summary judgment because the plaintiff had "provided evidence raising a genuine issue of material fact as to whether his arrest was the result of deception . . . by the defendant . . . ." Id. (internal citations and quotation omitted). However, Williams is an unpublished case and as such it is not "binding precedent . . . and cannot be relied upon to define clearly established law." JW *ex rel.* Williams v. Birmingham Bd. of Educ., 904 F.3d 1248, 1260 n.1 (11th Cir. 2018).

malicious prosecution claims on the basis of qualified immunity. (Doc. 8.) This does not preclude either McBride or Robbins from raising the defense of qualified immunity at a later stage of the case.

**IV.     Plaintiff's State Law Tort Claim**

Count IV of Plaintiff's Amended Complaint asserts a malicious prosecution claim against Winston under O.C.G.A. § 51-7-40. (Doc. 8, p. 14.) Winston argues that this claim is "barred by sovereign immunity pursuant to the Georgia Tort Claims Act" (hereinafter, the "GTCA" or the "Act") and points out that Plaintiff did not comply with several of the GTCA's requirements. (Doc. 10-1, pp. 12–20.) Plaintiff responds that "Winston's actions are not subject to the Georgia Tort Claims Act" because he "was not acting within the scope of his official duties of employment when identifying Plaintiff in the surveillance video." (Doc. 12-1, p. 17.)

Under the GTCA, "[a] state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor." O.C.G.A. § 50-21-25(a). However, the Act should not "be construed to give a state officer or employee immunity from suit and liability if it is proved that the officer's or employee's conduct was not within the scope of his or her official duties or employment." Riddle v. Ashe, 495 S.E.2d 287, 288 (Ga. 1998) (quoting O.C.G.A. § 50-21-25(a)). To determine if an employee acted within the scope of his authority, the Georgia Supreme Court has examined whether the employee was "performing the regular duties of [his] employment, during [his] regular hours of employment, at [his] regular site of employment." Shekhawat v. Jones, 746 S.E.2d 89, 93 (Ga. 2013); see also Lee v. Christian, 221 F. Supp. 3d 1370, 1382 (S.D. Ga. 2016) (regular duties, work hours, and workplace considered when determining whether employee acted within scope of employment under GTCA).

Plaintiff's Amended Complaint asserts that Winston's identification of him in the video as part of the investigation into the stolen gasoline was "not committed within the scope of his employment." (Doc. 8, p. 16.) In support of this assertion, the Amended Complaint further alleges that Winston's "job duties were related to the production and manufacturing process at Herty plant" and that he had no "human resource responsibilities, no investigative duties or responsibilities and no arrest powers."[9] (Id.) Taking these allegations as true as the Court must, it is apparent that Winston's regular duties at the Herty plant did not include taking part in investigations, particularly of suspicious or criminal activity at the plant. Thus, the Court finds that Winston was not acting within the scope of his official duties when he identified Plaintiff in the video. For this reason, the Court **DENIES** Defendants' Motion to Dismiss Count IV.

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants Richard Robbins, James Winston and Christopher McBride's Motion to Dismiss. (Doc. 10.) The Court **DISMISSES** Count I to the extent it asserts a Fourteenth Amendment claim and Count III entirely. Count I's Fourth Amendment malicious prosecution claim, as well as Counts II and IV will stand.

Finally, the Court **LIFTS** the stay of discovery, (doc. 15), that was imposed pending the Court's resolution of the Motion to Dismiss. Counsel shall conduct a Rule 26(f) Conference within twenty-one (21) days of the date of this Order and shall file a report of that conference within seven (7) days of the date of the conference. In conducting their conference and filing their report, counsel shall pay careful attention to and shall comply with the Court's Rule 26 Instruction Order, (doc. 3).

---

[9] The Amended Complaint provides no information concerning whether Winston viewed the video during his work hours or whether it was at the Herty plant.

17

**SO ORDERED**, this 18th day of March, 2020.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA