IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| MICHAEL PALMER, | |
| Plaintiff, | CIVIL ACTION NO.: 4:19-cv-167 |
| v. | |
| RICHARD ROBBINS, | |
| Defendant. | |

**O R D E R**

Presently before the Court are Plaintiff Michael Palmer's Motion for New Trial, (doc. 108), and Supplemental Motion for New Trial, (doc. 115).[1] Palmer sued Defendant Richard Robbins alleging that, by falsely identifying him as the perpetrator of a robbery in video footage, Robbins maliciously prosecuted him in violation of his Fourth Amendment rights under the United States Constitution.[2] (Doc. 8.) The Court held a jury trial that commenced on April 19, 2022, (doc. 94), and the jury returned a verdict in favor of Robbins, determining that he did not cause a criminal proceeding to be instituted or continued against Palmer, (doc. 100). Palmer brought the at-issue Motions, arguing that the jury's verdict is against the great weight of the evidence presented at trial and that no reasonable jury could have concluded that Robbins did not cause criminal

---

[1] Plaintiff originally filed a Motion for New Trial on July 6, 2022. (Doc. 108.) In a prior Order, the Court deemed Plaintiff's Motion inadequate because it lacked citations to the record. (Doc. 111.) The Court directed Plaintiff to obtain a copy of the trial transcript and to supplement his filing with record citations. (Id.) Plaintiff timely filed a Supplemental Motion for New Trial, (doc. 115), which is identical to the original Motion except that it contains footnotes with citations to the trial transcript. Consistent with its Order, the Court will review the Supplemental Motion for New Trial for purposes of ruling on both Motions.

[2] While Palmer brought additional claims against Robbins and other defendants, the jury only considered Palmer's claim of malicious prosecution against Robbins. (Docs. 17, 54.)

proceedings to be instituted against Palmer. (Docs. 108-1, 115.) Robbins filed a Response, (docs. 109, 117), and Palmer filed a Reply, (docs. 110, 116). For the reasons more fully explained below, the Court **DENIES** Palmer's Motion for New Trial, (doc. 108), and Supplemental Motion for New Trial, (doc. 115.)

## BACKGROUND

### I. Relevant Facts Presented at Palmer's Trial

At trial, Palmer attempted to show that Robbins falsely identified Palmer in video footage that showed an individual stealing gasoline from a gas pump at the Herty Advanced Materials Development Center ("Herty"), and that this identification caused Palmer to be wrongfully prosecuted. The following facts were presented at trial.[3]

Palmer was an employee of Herty[4] from October 2016 through February 2017, during which time Robbins was the plant manager. (Doc. 112, p. 12.) Robbins described his duties as

---

[3] Palmer makes several attempts in his briefing to assert facts that are not supported by the trial record, repeatedly offering cites that do not support the assertion made or failing to make a specific cite to the record altogether. (See, e.g., doc. 115, p. 3 (claiming the evidence showed "McBride was initially skeptical" of the video evidence which was never said or implied in the pages cited); id. at p. 5 (falsely asserting that McBride failed to give "any additional reason" for identifying Palmer's vehicle despite his clear testimony in the record identifying the make and model of the vehicle (see doc. 113, p. 65)); id. at p. 3 (citing generally to around 250 pages of transcript to support the contention that Robbins reported the activity to Georgia Southern administration).) While the Court assumes that some of these unsupported facts are from Palmer's original briefing, and perhaps could be found in previous depositions or other evidence, Palmer was specifically instructed to supplement that briefing with citations *to the trial transcript*. (See doc. 111.) The Court notes with frustration that most of the facts and citations in this Order come from the Court's own review of the trial transcript without much assistance from Palmer's citations. However, "[j]udges are not like pigs, hunting for truffles buried in briefs." United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991). Likewise, this Court is "not required to ferret out delectable facts buried in a massive record." Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1061 (11th Cir. 2011). Thus, it is not the Court's responsibility to find support—if any exists—for Palmer's arguments. Additionally, the Court will not be examining extraneous evidence that was not presented to the jury. For purposes of a Motion for New Trial based on the weight of the evidence, the only relevant facts are those facts that were presented to and heard by the jury.

[4] Herty is a research and development center located in Savannah, Georgia and is a division of Georgia Southern University which is located in Statesboro, Georgia. (Doc. 112, pp. 32–34.)

running "day-to-day operations" at Herty, (id. at p. 34.), which, he stated, allowed him to be well acquainted with all his employees, interacting with some multiple times a day, and even getting to know employees' personal vehicles, (id. at pp. 45–46). Robbins testified that, in 2016, he was made aware that gas was missing from Herty's pumps, which led him to install a video camera around the gas pump area. (Id. at pp. 39–42.) Once the video camera was installed, Robbins began monitoring the footage, which revealed what he believed to be instances of individuals stealing gas from the pump for personal use. (Id. at pp. 47–49.) Robbins testified that he was able to identify three individuals who worked at Herty by their discernable physical characteristics and vehicles. (Id. at pp. 50–52.) Robbins stated that he next contacted his supervisor Don McLemore, who said that he would be contacting the Georgia Southern Police Department. (Id. at pp. 49, 53.) Then, according to Robbins, McLemore instructed him to contact Officer Christopher McBride. (Doc. 113, pp. 33–34.) At trial, McLemore corroborated Robbins's version of events and testified that it was his decision to involve the police after Robbins brought the incident to his attention, and that this decision was made based on his personal observations of the criminal conduct he saw in the video. (Doc. 114, p. 13.)

McBride also testified that he personally saw the video after Robbins contacted him, and that it was "obvious . . . that [the individuals in the video] were pumping gas into their vehicles." (Doc. 113, p. 55.) McBride further testified that he had originally told Robbins and McLemore to handle the matter internally, which, Robbins testified, in his experience, was typically how similar matters were handled at Herty. (Id. at p. 62; see doc. 112, pp. 77–78 (testifying how previous incidents of theft simply resulted in dismissal and not criminal prosecution).) However, McBride stated that he was later instructed by his chief, Officer McCullough, to conduct further investigation. (Doc. 113, p. 62.) Both Robbins and McBride testified that McBride thereafter

contacted Robbins and asked him to get another witness who could identify the individuals in the video. (Id. at p. 63; doc. 112, p. 86.) Robbins then asked James Winston to watch the video and identify the individuals. (Doc. 112, pp. 86–87.) Winston also worked at the Herty plant and testified that he was Palmer's supervisor for five to six years. (Doc. 113, pp. 98–99.)

Winston testified that after Robbins asked him to watch the video, he was able to clearly identify the individuals in the video. (Doc. 113, p. 106.) Winston affirmatively stated that his identification reflected what he believed to be true and that he felt no pressure to identify the individuals in the video. (Id. at pp. 126, 144–45.) However, the jury also heard a recording of a previous phone call that Palmer placed to Winston, in which Winston stated that he was glad Palmer brought the lawsuit, and that he felt like he was being used by Robbins. (Id. at pp. 123–24.) The jury heard the relevant portions of this phone conversation as impeachment evidence, (see id. at p. 135), and at trial Winston explained what he said on the phone call as statements made because he was angry, (id. at pp. 123–26). Winston maintained that he was angry because he did not want to be involved and that he "felt used," but that his identifications were still truthful. (Id. at pp. 125–26.)

Beyond Winston's identification, McBride testified that he was instructed to interview the suspects Robbins identified in the video, and he asked Robbins to arrange a meeting with the three employees. (Id. at p. 62.) McBride testified that, while at Herty for the interview, he noticed the three vehicles driven by the suspects appeared to be the same three vehicles he saw in the video footage. (Id. at pp. 64–65.) He identified the cars based on their color, make, and model. (Id. at pp. 65, 83.) McBride testified that McCullough told him that Georgia Southern University's administration wished to pursue criminal charges, and, after receiving this instruction, he sought to secure arrest warrants for the suspects. (Id. at p. 92.) McBride testified that, on December 13,

4

2016, he contacted the Savannah-Chatham Metro Police Department ("Savannah PD") and sent the case file to Sergeant Joe Lewis to review. (Id. at pp. 92–93.) McBride testified that, at this point, his finding of probable cause was based on his personal review of the video evidence, Robbins's initial identification, Winston's corroborating identification, his personal identification of the suspects' vehicles, and Palmer's behavior towards him on the day of the interview. (Id. at pp. 95–96.) McBride then stated that, after he sent the case file, Savannah PD reviewed the case file and issued warrants based on the information in the file. (Id. at pp. 93–94.)

At the midtrial mark, Robbins moved for a directed verdict, arguing in part that no reasonable jury could find for Palmer on the element of causation. (Doc. 113, pp. 211–214.) The motion was taken under advisement, (id. at p. 218), and Robbins went on to present his case. Robbins made a renewed motion at the close of his case, which was also taken under advisement, but the Court noted it was a "close call," particularly because of testimony regarding the causation link. (Doc. 114, p. 30.) After closing statements, the jury was furnished with the following instructions with respect to the elements necessary to prove a claim for malicious prosecution:

> First: That Defendant caused a criminal proceeding to be instituted or continued against Plaintiff;
>
> Second: That Defendant acted with malice and without probable cause;
>
> Third: That the proceeding terminated in Plaintiff's favor. The parties have agreed that the proceeding terminated in Plaintiff's favor, so you should accept that as a proven fact;
>
> Fourth: That Plaintiff was unlawfully seized as a result of the criminal proceeding;
>
> Fifth: That Defendant's conduct caused Plaintiff's injuries; and
>
> Sixth: That Defendant acted under color of law. The parties have agreed that Defendant acted under color of law, so you should accept that as a proven fact.

(Doc. 99, p. 4.)  The jury received these instructions and was given a jury verdict form, which was broken up into specific questions as to findings on each individual element.  (Doc. 100.)  The jury only reached the first question and returned a verdict for Robbins, finding that he did not "cause[] a criminal proceeding to be instituted or continued against [Palmer]."  (Id.)  Because the jury answered "no" on the very first element, the verdict form instructed them to end their deliberations, and therefore the jury did not have to answer the remaining elements.  (Id.)  Palmer did not move for a directed verdict at any point in the trial.  (See generally docs. 112, 113, 114.)

## II.     Palmer's Motion for New Trial and Supplemental Motion for New Trial

Palmer thereafter submitted a Motion for New Trial, arguing that the verdict was "against the clear or great weight of the evidence and that no reasonable jury could have reached the verdict this jury reached based on the evidence that was presented."  (Doc. 108-1, p. 10.)  Notably, Palmer filed his Motion without first obtaining the trial transcript.  Robbins filed a Response, arguing, *inter alia*, that Palmer mischaracterized or misremembered what transpired at trial.  (See doc. 109, pp. 1, 3–5.)  Palmer then filed a Reply brief.  (Doc. 110.)  Based on Robbins's arguments that Palmer misrepresented what transpired at trial, the Court then entered an Order directing Palmer to order a copy of the trial transcript and supplement his brief with citations to the record.  (Doc. 111.)  Palmer thereafter requested the trial transcript and submitted his Supplemental Motion for New Trial, (doc. 115), along with an updated version of his Reply brief, both of which are largely identical to his original submissions but with supplemented record citations, (doc. 116).  Robbins then submitted his supplemented Response.  (Doc. 117.)

## STANDARD OF REVIEW

"[E]very litigant is entitled to one fair trial, not two."  Glassman Constr. Co. v. U.S. *ex rel* Clark-Fontana Paint Co., 421 F.2d 212, 215 (4th Cir. 1970).  Federal Rule of Civil Procedure 59(a)

provides that a litigant may be granted a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A party may move for a new trial on a number of bases, including "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." Tenor Cap. Partners, LLC v. GunBroker.com, LLC, No. 1:20-CV-613-TWT, 2022 WL 12464321 at *2 (N.D. Ga. Oct. 21, 2022) (quoting Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940)). Furthermore, "[m]otions for a new trial are within the sound discretion of the district court." Hessen *ex rel* Allstate Ins. Co. v. Jaguar Cars, Inc., 915 F.2d 641, 644 (11th Cir. 1990).

To grant a motion for a new trial based on the weight of the evidence, the Court must determine "if in [its] opinion, the verdict is against the clear weight of the evidence . . . or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Hewitt v. B.F. Goodrich Co., 732 F.2d 1554, 1556 (11th Cir. 1984) (internal quotation omitted). However, in granting a motion for new trial, the Court cannot "simply substitute [its] judgment for that of the jury." Id. Likewise, the Court cannot grant a motion for a new trial "merely because the losing party can probably present a better case on another trial." Hudson v. Chertoff, 473 F. Supp. 2d 1279, 1285 (S.D. Fla. 2007). Thus "new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." Hewitt, 732 F.2d at 1556.

### DISCUSSION

Palmer argues that he is entitled to a new trial because the jury's finding that Robbins did not cause his criminal prosecution was "against the clear or great weight of evidence and . . . no

7

reasonable jury could have reached the verdict this jury [reached] based on the evidence that was presented." (Doc. 115, p. 13.) Palmer's briefing is disjointed and unorganized, but as far as the Court can conclude, the primary basis for his motion is that the video that Robbins used to identify Palmer was of such poor quality that this identification was necessarily false and served as the sole initiator for the action against Palmer. Palmer's approach is overly simplistic and ignores crucial determinations of credibility that the jury apparently made in Robbins's favor.

To prevail on a claim of malicious prosecution, a plaintiff must show: (1) that the defendant caused a criminal proceeding to be instituted or continued against him or her; (2) that the defendant acted with malice and without probable cause; (3) that the proceeding terminated in the plaintiff's favor; (4) that the plaintiff was unlawfully seized as a result of the criminal proceeding; (5) that the defendant's conduct caused the plaintiff's injuries; and (6) that the defendant acted under color of law. See Paez v. Mulvey, 915 F.3d 1276, 1285 (11th Cir. 2019). In the present case, the jury did not address every element because it found that Palmer failed on the first element of causation. Because the jury did not reach the other questions on the verdict form, the Court will limit its analysis to whether, based upon the evidence presented at trial, the jury's finding that Palmer failed to prove that Robbins caused a criminal proceeding to be instituted against him was against the great weight of the evidence.[5]

A defendant is not the legal cause of a prosecution or other criminal proceeding where "there [is] no evidence that [the defendant] had anything to do with the decision to prosecute or that [the defendant] had 'improperly influenced' that decision." Williams v. Miami-Dade Police

---

[5] Palmer additionally insists in his Motion that, because the jury did not reach the other questions on the verdict form, the Court must then infer that the jury would have answered these questions in the affirmative. (Doc. 115, p. 13.) Palmer fails to provide any legal support for this extraordinary request, and the Court is not aware of any basis in law for such an inference. Accordingly, no inferences will be drawn in Palmer's favor on the questions that the jury did not answer.

Dep't, 297 Fed. App'x 941, 947 (11th Cir. 2008) (per curiam) (quoting Eubanks v. Gerwin, 40 F.3d 1157, 1160 (11th Cir. 1994)).  Indeed, the "intervening acts of the prosecutor, grand jury, judge[,] and jury . . . each break the chain of causation unless plaintiff can show that these intervening acts were the result of deception or undue pressure by the defendant." Barts v. Joyner, 865 F.2d 1187, 1195 (11th Cir. 1989).  A defendant is not considered to have instigated a criminal proceeding "if the defendant merely gives a statement to the proper authorities, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer[,] or if the officer makes an independent investigation." Martinez v. Brinks, Inc., 410 F. Supp. 2d 1202, 1205 (S.D. Fla. 2004).

In his Motion for New Trial, Palmer maintains that the evidence at trial clearly showed that Robbins provided false information to law enforcement, which was the sole basis for Palmer's arrest, which necessarily meant that Robbins "cause[d] a criminal proceeding to be instituted" against Palmer.  (Doc. 115, p. 14 (internal quotation omitted).  Thus, according to Palmer, "no reasonable jury could have found that causation was absent." (Id.)  The Court disagrees.  Palmer's arguments ignore significant testimonial evidence and pure questions of credibility that the jury clearly found to support Robbins's position.  At trial, Robbins attempted to show that he was merely conveying an identification that he believed to be true, that the intervening acts of McLemore, McBride, McCullough, and Savannah PD all broke the causal chain, and that he had no authority, or intention, to have Palmer prosecuted criminally.  (See generally doc. 114, pp. 50–52.)  Robbins provided ample evidence at trial that would lead a reasonable factfinder to conclude that Robbins's identification of Palmer was not the only evidence relied on by law enforcement, and, thus, was not the legal cause of his criminal prosecution.  Accordingly, because Palmer has

9

not shown that the jury's "no causation" finding was against the great weight of the evidence, his Motions are due to be dismissed.

I. **The Witnesses' Credibility Was Not So Obviously Flawed that a New Trial Is Warranted.**

In his Motion for New Trial, Palmer inexplicably contends that "credibility of witnesses is not an issue," and simply argues that that the evidence presented at trial cannot support the jury's conclusion. (Doc. 115, p. 13.) Ironically, however, Palmer's argument depends on discounting large portions of testimony presented to the jury because, in Palmer's view, the testimony is contradictory, and, therefore, deserving of less weight. While the Court "may weigh the evidence and *consider* the credibility of the witnesses," motions for new trial based on the weight of the evidence "are not favored and are granted 'sparingly and with caution,' only in 'exceptional cases.'" Row Equip., Inc. v. Terex USA, LLC, No. 5:16-cv-60, 2020 WL 13527440, at * 2 (S.D. Ga. Nov. 2, 2020) (quoting United States v. Martinez, 763 F.2d 1297, 1312–13 (11th Cir. 1985)) (emphasis added). Indeed, the Seventh Amendment protects the role of the jury as the "sole judge of the credibility of the witnesses and of the weight or value of their testimony." Liberty Mut. Ins. Co. v. Thompson, 171 F.2d 723, 726 (5th Cir. 1948).[6] Thus, a court should not "disturb the jury's finding of fact . . . if [at] trial there was any substantial evidence to support it." Id. While some conflicting testimony was presented at trial, the conclusion the jury reached on the element of causation depended on findings of fact as to the credibility of McBride, McLemore, and Winston's testimony. To grant a new trial in this circumstance would be to inappropriately "substitute [the Court's] judgment for that of the jury." Hewitt, 732 F.2d at 1556.

A. **Plaintiff's position requires the Court to discount large parts of McBride's testimony.**

---

[6] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Contrary to Plaintiff's contention that "credibility is not an issue in this motion," (doc. 115, p. 13), the credibility of Lieutenant McBride was integral to the issue of whether Robbins was the cause of the decision to prosecute Palmer. At trial, McBride testified that upon initially seeing the video, it "was obvious to [him] that [the individuals] were pumping gas into their vehicles." (Doc. 113, p. 55.) However, McBride testified that, after seeing the video, he told Robbins and McLemore to handle the incident internally with human resources,[7] and he only conducted further investigation at Chief McCullough's direction. (Id. at pp. 62, 81.) Indeed, McBride stated that, based on his experience, he would not have executed warrants based solely on Robbins's identification and the video evidence. (Id. at p. 58.)

After being instructed by McCullough to continue the investigation, McBride obtained Winston's identification of Palmer and found no problems with it, and he thereafter set up an interview with the suspects. (Id. at p. 70.) Crucially, McBride testified that on the day he interviewed the individuals who had been identified by Robbins, he recognized the cars he saw in the video in the parking lot. (Id. at p. 65.) He specifically said that he recognized Palmer's truck because it "had similar appearance, similar colors[,] and similar features to the vehicles that I saw in the video." (Id.) He went on to testify that his ultimate finding of probable cause was not solely based on Robbins's identification, but was also based on his personal identification of the truck together with his observations of the video, Winston's identification, and Palmer's demeanor on the day of the interview. (Id. at pp. 95–96.) McBride's testimony serves to show that law enforcement independently analyzed the facts and in fact required other pieces of evidence apart from Robbins's identification in deciding to pursue criminal charges against Palmer. Apparently,

---

[7] Robbins further testified that Herty's former policy would have similarly resulted in internal administrative instead of criminal action. (Doc. 113, pp. 76–78.)

11

the jury found McBride credible and determined that his further investigation to corroborate Robbins's identification was sufficient to break the causal chain.  While Robbins's identification may have aided the initiation of McBride's investigation, this is insufficient to find that Robbins *caused* Palmer's criminal prosecution.  See Martinez, 410 F. Supp. 2d at 1205 (finding the element of causation was not satisfied where a security company turned video evidence over to police and explained the video along with an identification of plaintiff's "coal sack"—which police alone had no knowledge of—because the determination of probable cause was left to law enforcement).

Palmer seeks to discredit McBride's testimony, repeatedly arguing that he could not have recognized the car because the video was of such poor quality, and thus he must have relied solely on Robbins's identification.  (Doc. 115, pp. 2, 14, 20.)  Unfortunately for Palmer, this is not up to the Court to decide.  The jury saw the video and listened to McBride's testimony.  While the quality of the video may not have been ideal, the Court cannot definitively say that no one could make an identification of the person or the vehicle shown in the video.  The jury saw the video and heard McBride testify that he recognized the truck.  He identified features about the truck that led him to this finding, (doc. 113, p. 65), and the jury chose to believe him.  Palmer's challenge hinges completely on the question of McBride's credibility, and it is not within the Court's discretion to overturn the jury's determination on that issue.  See Hewitt, 732 F.2d at 1558 ("When the resolution of the case boils down to credibility, the trial judge must allow the jury to function.  In this case, the usual deference to the factfinder on issues of credibility requires us to defer to the jury and not the judge.").

### B. Plaintiff's position requires the Court to override the jury's findings of credibility as to Winston's testimony.

Palmer also asks the Court to assume the "dubious" nature of Winston's identification of Palmer. (Doc. 115, p. 22.)  This is another challenge to a witness's credibility, and such an action

is likewise not within the Court's discretion.  See Alexander v. Mahfood, No. 3:07-CV-065-JTC, 2009 WL 10666080, at *2 (N.D. Ga. Feb 13, 2009) ("[I]t is not the role of the trial judge to make credibility determinations.").  Winston's identification of Palmer in the video footage was a valid piece of evidence that weighed against a finding that Robbins was the sole cause of Palmer's arrest.  At trial, Winston testified unequivocally that he immediately recognized Palmer in the video when it was shown to him, without any assistance from Robbins.  (Doc. 113, pp. 106, 142.)  He stated that he did not feel any pressure to identify Palmer but identified him simply because he recognized him in the video.  (Id. at p. 126.)  While Palmer zealously tried to undermine Winston's credibility by playing a recording of a later conversation between Winston and Palmer where Winston expressed feeling pressure to identify Palmer and stated he was "glad" Palmer had filed suit, (id. at p. 124), at trial Winston repeatedly explained his earlier comments were solely made out of anger, (id. at pp. 123–26).  The jury was presented two conflicting narratives of what Winston did: one where he was pressured into identifying Palmer and subsequently admitted via a phone call to Palmer that he had been "used," (id. at pp. 125–26), and another where he properly identified Palmer in the video with no outside influence but later expressed frustration for having been put in the middle of a situation he did not want to be a part of.  The jury, apparently, chose to believe the latter.  While Winston's inconsistent statements certainly would be a basis for the jury to question his credibility, it is entirely within the jury's discretion to accept Winston's explanation at trial for his earlier conflicting statements and find him credible.  See Fleming v. Mich. Mut. Liab. Co., 363 F.2d 186, 188 (5th Cir. 1966) ("[T]he jury's duty [is] to resolve conflicts in the evidence and draw reasonable inferences therefrom."); Thompson, 171 F.2d at 726 ("[I]t is the function of the jury . . . to reconcile the testimony of any witness who has made inconsistent statements . . . and the jury is not required to reject the entire testimony of any witness merely

because there are conflicts therein."). This Court is not required to override the jury's findings of fact as to Winston's credibility simply because the jury did not believe Palmer's version of events. See United States v. Ivory, 785 Fed. App'x 843, 847 (11th Cir. 2019) (finding that the government's witnesses would have needed to be "so fundamentally flawed" in order to justify a new trial).

II. **The Evidence Does not Require a Determination that Robbins Gave False Information to Pressure Law Enforcement into Prosecuting Palmer.**

Beyond asking the Court to overrule the jury's findings of fact, Palmer argues that, even if the jury was permitted to find that there were intervening acts between Robbins's identification of him and the decision to prosecute, such intervening acts did not break the chain of causation because he "can show that these intervening acts were the result of deception or undue pressure by the defendant[s]." (Doc. 115, p. 17 (quoting Barts, 865 F.2d at 1195)); see also Jackson v. Kmart Corp., 851 F. Supp. 469, 472 (M.D. Ga. 1994) ("[I]f it is found that his persuasion was the determining factor in inducing the officer's decision, or that he gave information which he knew to be false and so unduly influenced the authorities, he may be held liable."). Palmer argues that the Court must necessarily find that Robbins placed undue pressure on law enforcement by providing either intentionally or recklessly false information to McBride. (Doc. 115, p. 18.) The Court disagrees and finds that it was within the jury's discretion to find that Robbins did not intentionally deceive law enforcement.

As the basis for his argument, Palmer claims that Robbins "quite plainly" deceived McBride into believing Palmer was in the video. (Id.). Palmer argues, with no supporting citations, that the Court must assume that the jury would have necessarily reached this conclusion because the jury did not answer the question of malice on the verdict form. (Id. at pp. 13, 17.) As discussed previously herein, see n.4, supra, Palmer provides absolutely no legal authority to

14

support—much less require—such an inference, and the Court is unaware of any such legal authority. Palmer's only support for this argument is language taken from this Court's prior Order granting in part and denying in part a motion to dismiss filed by Robbins. (Doc. 115, pp. 20–21; see doc. 17, p. 9.) Palmer takes the language out of context and also grossly misunderstands the applicable standards of law at the motion to dismiss stage—as opposed to the standards at trial or on a motion for new trial. In addressing a motion to dismiss for failure to state a claim, the Court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). Thus, when the Court stated that Robbins "would not have been able to offer an honest and good faith identification of Plaintiff as one of the individuals in the video," it was—as it explicitly stated in the Order—merely "[a]ssuming, as [it] must, that the quality of the footage [was] truly as poor as [Palmer] describe[d] it" in the Complaint. (Doc. 17, p. 9.) At trial, however, the jury does not assume the truth of the plaintiff's allegations, and courts are not required to draw inferences in a plaintiff's favor in reviewing a motion for new trial under Rule 59.

The jury saw the video evidence themselves at trial and apparently found it to be sufficiently reliable for Robbins to make an identification. (Doc. 112, p. 115.) The reliability of the video evidence was further bolstered by Robbins's in-court identifications of a number of Herty employees' vehicles from the footage. (Id. at pp. 100–12.) Moreover, Robbins testified that he had no ill-will or spite towards Palmer, and even hired him back when Palmer reapplied to work at Herty. (Doc. 113, pp. 19–21.) Indeed, it was uncontroverted at trial that Robbins did not reach out to law enforcement on his own accord, but had simply reported the incident to McLemore and relied on the Herty administration make the decisions. (Doc. 112, p. 53; doc. 114, p. 13.) There appears to be no basis for this Court to find that Robbins deceived anyone in the course of the

investigation without assuming that the video evidence was inherently flawed. Palmer chose to show the video at trial and, in doing so, had the opportunity to attempt to persuade the jury that the video quality was too poor for Robbins to be able to reliably identify Palmer. He cannot come to the Court now asking to override the jury's decision-making authority on that issue, decree that the video evidence was unreliable, and find that Robbins therefore deceived law enforcement when he said he recognized Palmer in the footage. Palmer's repeated efforts to urge this Court to essentially disregard the contents of the video evidence is misplaced and does not support a finding that the verdict was clearly against the great weight of the evidence.

Generally, "[m]otions for new trials based on weight of the evidence are not favored," and courts should "grant them sparingly and with caution, doing so only in those really exceptional cases." United States v. Cox, 995 F.2d 1041, 1043 (11th Cir. 1993). Palmer grossly misunderstands the extraordinary nature of the relief he seeks. He argues for the application of certain legal standards—such as critical inferences in his favor—without pointing to any legal authority for doing so. The legal standards at issue have already been presented to and applied by the jury, resulting in an unfavorable result for Plaintiff. Plaintiff cannot now ask the Court to change that result unless he makes the necessary exceptional showing, which he has not done here.

## CONCLUSION

Based on the foregoing, Palmer has not shown that the jury's verdict was against the great weight of the evidence. Accordingly, Palmer's Motion for New Trial, (doc. 108), and Supplemental Motion for New Trial, (doc. 115), are **DENIED**.

**SO ORDERED**, this 4th day of January, 2023.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA